OPINION
{¶ 1} Defendant-appellant, Gregory Parlier, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, finding him in contempt of court. We affirm the decision of the trial court.
 {¶ 2} Appellant and appellee, Lisa McKinnis, have four children together, "and a fifth one coming." Justin Parlier was born on April 25, 1992. On October 7, 1993, the Clermont County Department of Human Services filed a complaint against appellant for current child support, past child support, and reimbursement for medical expenses. At the time, Ms. McKinnis was receiving public assistance for Justin.
 {¶ 3} On August 29, 1994, appellant was ordered to pay $36 per week in child support retroactive to April 1, 1993, which amounted to $2,340 in past child support. Appellant was also ordered to repay the Ohio Department of Human Services $3,885 for birth expenses. Appellant was ordered to pay $10 per week plus two percent poundage toward the arrears.
 {¶ 4} On July 10, 1996, appellant's child support obligation was suspended because the parties were cohabiting. However, appellant failed to make payments toward the arrearage. On July 22, 1996, appellant was found in contempt and ordered to pay $50 per month plus two percent poundage toward his arrearage. Appellant's arrearage then totaled $10,168.38. However, appellant's tax refund of approximately $3,200 was intercepted and applied toward the arrearage.
 {¶ 5} On December 8, 1997, appellant was found in contempt a second time. He was ordered to pay $50 per month plus two percent poundage toward his obligation. Appellant's arrearage then totaled $7,718.65. About the same time in 1997, Ms. McKinnis went off welfare and was convicted of welfare fraud. She was ordered to pay $12,792. Ms. McKinnis' restitution was paid in full in February 2001.
 {¶ 6} On March 22, 2002, the Clermont County Children Service Enforcement Agency ("CSEA") filed a motion in contempt against appellant for failing to repay the Clermont County Department of Human Services. On February 3, 2003, the magistrate found appellant in contempt. Appellant filed objections to the magistrate's decision and made a request for findings of fact and conclusions of law. On February 19, 2003, the magistrate entered findings of fact and conclusions of law. On May 8, 2003, the judge affirmed the magistrate's decision. Appellant appeals the decision raising four assignments of error.
 Assignment of Error No. 1 {¶ 7} "The trial court erred and abused its discretion by overruling appellant's objections to the decision of the magistrate and relying on the records of the child support enforcement agency without further inquiry."
 {¶ 8} Appellant argues that the trial court erred when it found him in contempt in the absence of a proper audit. Appellant argues that the trial court should not have relied on the information provided by CSEA without further inquiry.
 {¶ 9} Because the primary interest involved in contempt proceedings is the authority and proper functioning of a court, great reliance is placed upon the trial court's discretion in contempt matters. Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14, 16. A trial court's contempt order will not be reversed by a reviewing court unless there has been an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. An abuse of discretion connotes more than an error of law or judgment, it indicates that the trial court's decision is unreasonable, arbitrary or unconscionable. Lindsayv. Curtis (1996), 115 Ohio App.3d 742.
 {¶ 10} It is well-established that "[e]valuating evidence and assessing credibility are primarily for the trier of facts."Babka v. Babka (1992), 83 Ohio App.3d 428, 436. In addition, an appellate court must not substitute its judgment for that of the trial court when competent credible evidence supports the trial court's decision. Myers v. Garson, 66 Ohio St.3d 610, 615-616,1993-Ohio-9.
 {¶ 11} At the contempt hearing, CSEA's account clerk, Diane McCarty, testified that on November 15, 2002, she performed an audit on appellant's account. She testified that appellant was ordered to pay $3,885 for past medical expenses and $2,340 for past support plus two percent poundage. She testified that appellant made only $100 in payments and his total arrearage exceeded $6,700.
 {¶ 12} However, appellant argues that he is entitled to a credit that is not reflected on CSEA's records. Appellant argues that he paid the restitution payments for Ms. McKinnis' welfare fraud conviction and the payments should be reflected on CSEA's records. The magistrate determined that Ms. McKinnis' welfare fraud restitution payments were irrelevant to appellant's arrearages.
 {¶ 13} Civ.R. 53(E)(4)(b) provides, in pertinent part:
 {¶ 14} "The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."
 {¶ 15} R.C. 2705.02 states in part:
 {¶ 16} "A person guilty of any of the following acts may be punished as for a contempt:
 {¶ 17} "Disobedience of, or resistance to, a lawful * * * order, rule, judgment * * * of a court or an officer."
 {¶ 18} The magistrate determined that "the record in this matter reflects that back in 1994 [appellant] was ordered by the Court to repay certain sums of money to the Child Support Enforcement Agency * * * as of December of 1997 the Court found that he had an arrearage as of that time of $7,718.65. Construing the evidence at it's (sic) best it shows that [Ms. McKinnis] was * * * convicted of welfare fraud [in 1997] and that payments were made to satisfy and relieve [Ms. McKinnis] of her obligation * * * on the welfare fraud. I fail to find that evidence as relevant" to [appellant's] charge of contempt." The trial court adopted the magistrate's decision.
 {¶ 19} After thoroughly reviewing the record, including the parties' foregoing testimony, we find that even if appellant paid for Ms. McKinnis' welfare fraud restitution, appellant was ordered by the court to make payments for his own obligations of past child support and past medical expenses. There is competent credible evidence supporting the trial court's finding that appellant violated a court order. We hold that the trial court did not abuse its discretion in overruling appellant's objections to the magistrate's decision. Therefore, the trial court was not unreasonable, arbitrary or unconscionable in finding appellant in contempt. Appellant's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 20} "The trial court erred in finding that the appellee had established appellant's contempt of court by clear and convincing evidence."
 {¶ 21} Appellant argues that CSEA did not present sufficient evidence to prove its motion for contempt.
 {¶ 22} In a contempt proceeding for failure to pay court ordered child support, the movant for contempt must establish by clear and convincing evidence that the obligor is in contempt for failure to pay support. Pugh v. Pugh (1984), 15 Ohio St.3d 136,139. In this case, we find that CSEA presented clear and convincing evidence that appellant failed to make his scheduled payments for child support. At the contempt hearing, the CSEA account clerk testified that she performed an audit on appellant's account. She testified that appellant was ordered to pay $3,885 for past medical expenses and $2,340 for past support. She testified that appellant's arrearage is in excess of $6,700.
 {¶ 23} Appellant argues that he paid Ms. McKinnis' restitution obligation for welfare fraud, which was paid in full in February 2001. He did not testify that he was unable to pay for his own obligations. In fact, appellant continued to sporadically pay his arrearage after Ms. McKinnis' restitution was paid in full in February 2001. Appellant paid $100 toward his arrearage in June 2002.
 {¶ 24} The magistrate determined that Ms. McKinnis' restitution payments for welfare fraud are irrelevant to appellant's obligations for past support and medical expenses. Consequently, appellant has not demonstrated that his support payments are current or demonstrated an inability to pay his obligations. Accordingly, the second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 25} "The court erred in holding that the defendant was in contempt of court as the record reflects that the state of ohio has already been compensated for the medical payments at issue and the court's ruling would result in a double recovery by the state of ohio."
 {¶ 26} Appellant argues that the State of Ohio should not be permitted to recover twice for the same fraudulent benefits. Appellant cites Bradfield v. Stop-N-Go Foods, Inc. (1985),17 Ohio St.3d 58, for the proposition that holding him in contempt will allow the state a double recovery. Appellant admits that the instant matter is easily distinguishable from the Bradfield
analysis of a Workers' Compensation Claim; however, he maintains that it supports the argument that a double recovery would be unjust.
 {¶ 27} Appellant was ordered by the court to pay $3,885 for past medical expenses and $2,340 for past support. Appellant was placed on a $50 per month payment plan. Appellant failed to make his payments. Ms. McKinnis' payments for welfare fraud restitution are separate from appellant's obligations. Therefore, the state has not already been compensated for appellant's obligation and will not be receiving an unjust double payment. Accordingly, the third assignment of error is overruled.
 Assignment of Error No. 4 {¶ 28} "The appellant was denied procedural and substantive due process of law as guaranteed by the fifth andfourteenth amendments to the united states constitution and Article I, section 10 of the constitution of the state of ohio."
 {¶ 29} Appellant argues that he was denied due process of law by CSEA's failure to provide a proper audit and the trial court's reliance upon CSEA's testimony. Appellant claims that the audit conducted by CSEA was incomplete and inaccurate. Appellant maintains that in the absence of a competent CSEA audit he was not afforded a meaningful opportunity to be heard, therefore he was denied due process of law.
 {¶ 30} In a contempt case, "a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." R.C. 2705.03. Due process and the statutory provisions of R.C. 2705.03 require that an individual accused of contempt "be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." Courtney v. Courtney
(1984), 16 Ohio App.3d 329, 332.
 {¶ 31} Furthermore, "notice which is reasonably calculated to reach the individual alleged to be in contempt also will withstand objection. Despite the potential for imprisonment there is no requirement that such notice must be personally served upon the individual." McGill v. McGill (1982), 3 Ohio App.3d 455,457.
 {¶ 32} In this case, appellant was personally served with a summons for contempt on April 9, 2002. Appellant also appeared at the February 3, 2003 hearing with his attorney and testified on his own behalf. Based on the above, appellant was sufficiently notified of the contempt charges and given a reasonable opportunity to meet them by way of defense or explanation. See R.C. 2705.03.
 {¶ 33} Furthermore, it is well-established that "[e]valuating evidence and assessing credibility are primarily for the trier of facts." Babka, 83 Ohio App.3d at 436. The CSEA account clerk testified that she performed an audit on appellant's account and his arrearage is in excess of $6,700. CSEA also presented evidence that appellant failed to make his scheduled payments. Appellant failed to produce records to demonstrate that his arrearage was paid or that he was unable to pay the arrearage.
 {¶ 34} The trial court chose to believe CSEA's evidence.
 {¶ 35} An appellate court must not substitute its judgment for that of the trial court when competent credible evidence supports the trial court's decision. Myers,66 Ohio St.3d at 615-616.
 {¶ 36} Consequently, appellant was not denied his due process rights. Therefore, the fourth assignment of error is overruled.
Judgment affirmed.
POWELL and VALEN, JJ., concur.